O'BRIEN and another, Appellants, vs. DANE COUNTY, Respondent.

*May 6—June 4, 1940.*

For the appellants there was a brief by *Rooney & Hillyer* of Madison, and oral argument by *Frederick F. Hillyer.*

For the respondent there was a brief by *Norris E. Maloney,* district attorney, and *Walter M. Bjork,* assistant district attorney, and oral argument by *Mr. Bjork.*

NELSON, J.  A careful consideration of the evidence adduced, the manner of submitting the issues to the jury, and the instructions of the court, leads us to conclude that the plaintiffs were not afforded a fair and proper trial.

The plaintiffs alleged, in substance, that on or about October 21, 1935, they entered into a contract with the defendant, wherein and whereby it was agreed: (a) That the plaintiffs leased a portion of their limestone quarry to the defendant; (b) that they reserved to themselves the east side of that quarry, which they would designate and stake out; (c) that the defendant would build a fence around the quarry so as to permit the plaintiffs to pasture adjoining land; (d) that such trees as were necessary to be removed would be trimmed and placed in a pile for the use of the plaintiffs; (e) that the defendant would quarry and grind about three thousand tons of limestone and would pay to the plaintiffs the sum of five cents per ton for all limestone ground; (f) that the defendant would grind fifty tons of limestone for the plaintiffs at fifty-eight cents per ton; (g) that on days when the defend-

ant was not grinding limestone, or working in or about the quarry, the owner of the crusher would be permitted to grind limestone for the plaintiffs at their expense; and (h) that the defendant would keep and maintain the quarry in a clean and safe condition at all times.

The defendant admitted all of the alleged provisions of the contract except (e) that it would grind about three thousand tons of limestone and (f) that it would grind fifty tons of limestone for the plaintiffs at fifty-eight cents per ton.

The plaintiffs further alleged that the defendant had refused to grind fifty tons of limestone for the plaintiffs at fifty-eight cents per ton; had refused to permit the operator of the crusher to grind limestone for the plaintiffs on days when the defendant was not working in the quarry; had failed to build a fence around the quarry; had quarried rock and stripped land in that area of the quarry reserved to the plaintiffs; had stripped such land and cut down approximately thirty trees consisting of white oak, bur oak, and hickory; had failed to trim the fallen trees and place them and the stumps in a pile for plaintiffs' use; had failed to keep the quarry in a clean condition; had constructed a roadway into the quarry in such a manner as to result in a progressively developing gully, and had failed to pay to the plaintiffs the sum of five cents per ton for the limestone ground by the defendant.

Evidence was adduced upon the trial tending to show that the contract entered into between the plaintiffs and the defendant was substantially as alleged in their complaint; that the defendant had refused to grind fifty tons of limestone for the plaintiffs at fifty-eight cents per ton; that the plaintiffs were told that they would have to pay the same price that others were paying for crushed limestone; that the defendant had refused to allow the stone-crusher contractor to grind limestone for the plaintiffs on days when the defendant was not working in the quarry; that the defendant

had failed to construct a fence around the quarry and driveway; that the plaintiffs had staked out the line between the east portion of the quarry reserved to the plaintiffs and the rest of the quarry; that the defendant had stripped the lands in that area, cut down a number of trees, and ground up a hundred tons of limestone which the plaintiffs had already quarried; that the defendant had failed to keep the quarry in a clean condition, and while occupying the quarry, had spread a large quantity of quack grass in and about the quarry. It was admitted by witnesses produced by the defendant that it had refused to grind fifty tons of limestone for the plaintiffs at fifty-eight cents per ton; that it had notified the crusher contractor not to grind limestone for the plaintiffs on days when the defendant was not working in the quarry; that the defendant had not constructed a fence around the quarry; that in quarrying rock and in stripping the land it had gone beyond the line designated by the plaintiffs, and that the defendant had appropriated and ground a considerable amount of limestone theretofore quarried by the plaintiffs. It appeared that after the defendant had refused to deliver fifty tons of limestone to the plaintiffs at fifty-eight cents per ton, had refused to permit the stone-crusher contractor to grind limestone for the plaintiffs on days when the defendant was not working in the quarry, had failed to construct a fence around the quarry, had invaded the area of the quarry reserved to the plaintiffs, and had appropriated a large quantity of rock quarried by the plaintiffs, had stripped a considerable portion of the area reserved to the plaintiffs, and had cut down a number of trees growing in that area, the plaintiffs told the defendant to stop work.

The trial court, in its very brief instructions to the jury, among other things, stated:

"The essential question in this case is who broke the contract. Did Dane county break it or did O'Brien break it?"

The court further instructed the jury as follows:

"Evidence was offered of various items of damage. Nine in all were alleged by the O'Briens, but the court has ruled as a matter of law that six of those items are not to be allowed, and therefore your consideration on damages will be limited to three points; namely: Damage as to not grinding the first fifty tons at fifty-eight cents; damage to trees on the east side of the quarry; and as to stripping and quarrying rock on east side of quarry."

We cannot concur in the views of the trial court that the essential question in the case was: "Who broke the contract?"

It is considered that a proper trial of the issues raised required the court to instruct the jury that a contract was concededly entered into; that certain provisions thereof were not in dispute, and that certain provisions thereof were in dispute. Questions relating to the disputed provisions of the contract should have been submitted to the jury so as to permit it to determine whether they were parts of the contract, and if so, whether the defendant had refused to perform them, and if so, whether the plaintiffs had suffered damages as a result of such breaches. As to the provisions of the contract which were not in dispute, the court should have submitted questions to the jury so that it might have determined whether the defendant refused to perform the several agreements, and if so, whether damage to the plaintiffs resulted therefrom. The court also should have submitted to the jury a question whether the defendant had breached its contract with the plaintiffs in material respects prior to the time when the plaintiffs stopped the defendant from proceeding with the work. The action of the court in withholding from the consideration of the jury the issues, whether the defendant breached the contract by refusing permission to the crusher contractor to grind limestone for the plaintiffs on days when the defendant was not operating the quarry; whether the defendant appropriated limestone quar-

ried by the plaintiffs; whether the defendant breached the contract by failing to construct a fence around the quarry; whether the defendant breached its contract by spreading quack grass in and about the quarry, was in our opinion clearly error and amounted to an invasion of the province of the jury.

It appears that the trial of the action was commenced on Monday, May 15, 1939, when most of the testimony was adduced; that the court on that day continued the trial until Wednesday afternoon because of Judge REIS' desire to attend the funeral of a relative; that Judge REIS did not return until shortly before noon on Friday when the trial was resumed and some rebuttal testimony was adduced; and that the case was then submitted to the jury. It is contended that this continuance was prejudicial to the plaintiffs. It is likely that had the issues been promptly submitted to the jury, the jurors doubtless would have had a better recollection of the testimony. However, we do not consider that the continuance alone amounted to prejudicial error. In our opinion, a new trial should be granted so that the various jury issues may be properly submitted by a single special verdict to another jury.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.