NADEN, Respondent,* v. JOHNSON and wife, Appellants.*

*No. 174.   Argued October 29, 1973.—Decided December 10, 1973.*
(Also reported in 212 N. W. 2d 585.)

* Motions for rehearing denied, without costs, on February 5, 1974.

378

380

For the appellants there were briefs by *Potter, Wefel & Nettesheim* of Wisconsin Rapids, and oral argument by *Walter G. Wefel.*

For the respondent there was a brief by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *William P. Skemp.*

BEILFUSS, J. The issues are as follows:

(1) Was it error to submit the trial issues to the jury by means of an ultimate-fact form of verdict rather than specific inquiries?

(2) Was it error not to grant a new trial based upon newly discovered evidence?

(3) Should a new trial be granted in the interest of justice?

The appellant-defendant Johnson argues that the court erred in submitting the special verdict questions in terms of issues of ultimate fact rather than separating these issues into specific questions comprising these ultimate facts. As authority for this proposition he cites the 1940 case of *O'Brien v. Dane County,* 235 Wis. 59, 292 N. W. 440. However, in 1961, the rule as to submission of special verdicts was amended so that sec. 270.27, Stats., now states:

"**Special verdicts.** The court may, and when requested by either party, before the introduction of any testimony in his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. *It shall be discretionary with the court whether to submit such questions in terms of issues of ultimate fact, or to submit separate questions with respect to the component issues which comprise such issues of ultimate fact.* In cases founded upon negligence, the court may submit separate questions as to the negligence of each party, and whether such

negligence was a cause without submitting separately any particular respect in which the party was allegedly negligent. The court may also direct the jury, if they render a general verdict, to find upon particular questions of fact." (Emphasis added.)

In discussing this same issue as applied to a negligence case, this court said:

"The main argument by appellant is that there should have been a verdict on individual items of negligence and the trial court abused his discretion in failing to submit the case that way. This is nothing more than a reargument of the propriety of an ultimate-fact verdict. The proper way to change the rule is in a proceeding to change the rule, not in an individual case. On the merits the appellant presents nothing more than the usual arguments in favor of the particular-item verdict as against the ultimate-fact verdict. That the ultimate-fact verdict permits the jury to do better what it most practically does, namely, look at the overall negligence of the parties and attach the blame accordingly without being trapped by technicalities and inconsistencies when considering the negligence of the parties piecemeal, remains as the most-effective argument for the use of the ultimate-fact verdict. Clearly there was no abuse of discretion on the part of the trial court in submitting the case to the jury the way it did." *Milwaukee Automobile Mut. Ins. Co. v. National Farmers Union Property & Casualty Co.* (1964), 23 Wis. 2d 662, 666, 128 N. W. 2d 12.

While the cases cited and considered dealing with the question of the appropriateness of the ultimate-fact verdict are negligence cases, the language of the statute does not restrict its application to negligence cases. In addition to the statute, the rule is well established that the form of the special verdict is discretionary with the trial court and will not be interfered with if the material issues of fact are encompassed by the question and appropriate instructions are given.[2]

---

[2] *Gilbert v. United States Fire Ins. Co.* (1970), 49 Wis. 2d 193, 206, 181 N. W. 2d 527; *Dahl v. K-Mart* (1970), 46 Wis. 2d 605, 176 N. W. 2d 342.

The defendant-appellant argues that because a part of the contract was written and a sharp dispute existed as to the extent of additional oral agreements and the breach thereof, it is impossible to determine which oral additions the jury determined were agreed to and which parts of the contract, oral or written, were breached.

A special verdict making more specific inquiries as to contract provisions and breaches thereof could well have been used in this case. However, it does not necessarily follow that it was an abuse of discretion to submit the factual issues in form of ultimate-fact questions.

The instructions given to the jury by the trial court directed to Question 1 sufficiently informed the jury as to the legal requirements of an oral agreement and the effect of a breach. The trial court also gave all of the instructions requested by the defendant-appellant that would excuse performance or minimize the damages of a breach. The instructions were sufficient to cover the issues.

There was sufficient credible evidence to support the plaintiff-respondent Naden's claims of agreed oral additions and breaches of these agreements. It is apparent from a reading of the entire record that the jury's major problem was who to believe. The verdict reveals it accepted the testimony of the plaintiff Naden and his witnesses on the disputed issues and rejected that of the defendant Johnson and his witnesses.

We conclude it was not an abuse of discretion to submit the issues in the form of an ultimate-fact verdict.

The defendant-appellant contends it was error not to grant him a new trial based upon newly discovered evidence.[3]

The defendant argues that during the course of the trial the plaintiff Naden, for the first time, claimed that the beds on the six acres were three feet above the existing beds pursuant to the orders of Johnson and the

---

[3] *See* sec. 270.50, Stats.

surveyor's stakes rather than two feet as agreed to, and that he only ordered the contractor to lower them to the agreed two-foot level.

The defendant-appellant states in his brief that the level of the beds, additional costs of lowering them and the attendant delays in completing them for planting were the most important issues in the case; that because of this he carefully and thoroughly questioned Naden concerning these matters at the pretrial adverse examination; that Naden had never before claimed that Johnson had ordered or permitted the beds to be completed at a level three feet above the existing bed. The defendant Johnson asserts that this was a new theory of the case that had not been alleged in the pleadings nor claimed at the adverse examination; that it was a change of position as to a crucial issue; that it took him by surprise and that he had no opportunity to call witnesses to refute this testimony.

In support of his motion for a new trial based upon newly discovered evidence, he presented the affidavits of several persons who had some knowledge of the transactions and the work being done. Without detailing the contents of these affidavits, suffice it to say they did dispute the testimony given as to the depth of the beds, who ordered the change, and some elements of damage. Counteraffidavits were filed which to some extent explained away the effect of the defendant's affidavits.

The rules governing the granting of a new trial are of long standing. They are: (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at the trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.[4]

---

[4] *Mickoleski v. Becker* (1948), 252 Wis. 307, 31 N. W. 2d 508.

If the newly discovered evidence fails to comply with any one of these five requirements the trial court does not abuse its discretion in denying the motion for a new trial.

In this case the issue of why the beds were lowered was recognized by all counsel prior to trial. The persons who furnished the post-trial affidavits were known to the defendant and their participation in the events which gave rise to the dispute was also generally known or could have easily been determined. All of these persons could have been witnesses at the trial, with the exception of one of the Keichinger brothers who was ill. However, there is no showing that his deposition could not have been taken.

We believe, with due diligence, that the defendant could have discovered the evidence set forth in the affidavits and, further, in most instances, it was cumulative.

In addition to a failure to meet all of the requirements set forth above, as the trial court noted, if the defendant believed this was new evidence of a new theory that came as a surprise, he could have, but failed to, object to the evidence as being beyond the scope of the pleadings, or asked for a recess or continuance to secure the witnesses to refute it.

The trial court did not abuse its discretion in denying the motion for a new trial based upon newly discovered evidence.

The defendant-appellant has requested that this court exercise its discretion under sec. 251.09, Stats., and award a new trial to him in the interest of justice. We have concluded that this is not a proper case for us to exercise our discretion to order a new trial in the interest of justice on all issues. We believe the liability issue, that is the extent of the agreements between the parties and the breaches thereof, has been determined by the jury supported by sufficient credible evidence, though sharply disputed, and must be sustained. We are, however, con-

cerned about one of the grounds asserted for a new trial, namely, excessive damages.

The contract price for the 23 acres with the new beds completed and planted by June 15, 1968, was $67,000. The oral agreement by the parties that Naden would be liable for the contractor's costs to complete the beds to the extent of $5,000 increased his total agreed purchase cost to $72,000. The jury awarded damages in the amount of $27,100. $27,100 is obviously a substantial award in view of the $67,000 purchase price for the entire 23 acres, including the personal property.

The record reveals that some elements of the damages could be fixed by the jury with a high degree of certainty. Keichinger Brothers' charge to Naden for the bed construction was not $5,000 but $15,000, compromised by Naden and the Keichingers to $12,000. Naden's damage as to this element is clearly $7,000. There is also ample credible evidence to support a finding that Naden was required to pay $3,000 for the new vines planted in 1969 and $4,600 to have the vines planted in 1968 removed, the bed renovated for the 1969 planting, and the planting of these new vines. These elements of damage total $14,600.

There were several other items of damages testified to. The jury could rightfully find that Naden did suffer damages as to those items but the proof of the exact dollar amounts is meager.

In this category the jury could find that the contract was breached and that Naden suffered damages in the following respects: Johnson agreed to supervise the entire marsh for the 1968 season. He had a full time job elsewhere and devoted very little time to supervision. Supervision was important because it was known at the time the contract was entered into that Naden would not be able to be there very often in 1968. Johnson agreed to plant the vines in 1968—the employees he sent were

unable or incompetent to do the work. Johnson agreed to send a truck and harvest the 1968 crop—he failed in this respect. Only 350 barrels of cranberries were harvested in 1968 as contrasted to 2,100 barrels in 1969, which would provide a gross income of $20,000 to $30,000. There is evidence, however, that 1968 was a very poor year for cranberry production in that area and that 1969 was an exceptionally good year. In the trial court's memorandum opinion, the judge stated that a part of the poor 1968 crop could be attributed to lack of proper supervision. One year's crop on the six acres was lost because the vines had to be replanted in 1969. But there is very little evidence of dollar value as to this production loss. Searles vines were not planted in 1968 as agreed, but no damage could be awarded for this item because the vines planted did not grow and there was no showing that Searles vines would have done better. In any event, the plaintiff was compensated for a crop loss for one year and for the cost of the new vines and their replanting—any additional award would be duplicitous. The Federal government had established a quota system for cranberry growers. The quota sets the amount of cranberries each grower can sell. The quota was established by taking the best two years of production starting in 1968 and ending in 1973. In 1968 the production for reasons set forth above was below average and one year's production on the six acres was lost. These losses could detrimentally affect Naden's quota.

Admittedly Naden did suffer some damage because of items listed above and admittedly it is difficult to prove precise dollar values for all of these items. Nevertheless, the burden to prove by credible evidence to a reasonable certainty the damages and the amount thereof is with the claimant. He must establish at least to a reasonable probability the amount of these damages.

The plaintiff, Naden, has clearly proven damages of $14,600 as set forth above. The remaining $12,500 of

the $27,100 total rests upon tenuous grounds. Without detailing the evidence, we conclude the evidence does not support the award of $12,500 for the items last described. We believe the evidence reasonably supports a verdict not to exceed total damages in the amount of $20,000.

In this case, on these facts, we conclude the interest of justice will be served by giving the plaintiff-respondent the option to elect to remit $7,100 of the judgment rendered in his favor within twenty days after remittitur and, in the event he fails to so elect, the defendant-appellant is awarded a new trial limited to the issue of damages.[5]

*By the Court.*—The order denying the motion for a new trial upon the ground of newly discovered evidence is affirmed. The judgment is affirmed as to liability, and is reversed and remanded for a new trial on damages only unless within twenty days of remittitur the plaintiff-respondent elects to remit $7,100 of the judgment rendered. No costs to be taxed.

---

[5] *See Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.