859 F.2d 501
 7 UCC Rep.Serv.2d 89
 FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff,
v.
KREBS ENGINEERS, Defendant-Appellee, Cross-Appellant.
and
Midwesco, Inc. and United States Fidelity & Guarantee
Company, Defendants- Appellants, Cross-Appellees.
 Nos. 87-1236, 87-1306.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 30, 1987.
Decided Oct. 5, 1988.
Rehearing and Rehearing In Banc Denied Nov. 30, 1988.
 
 Aram A. Hartunian, Hartunian, Futterman & Howard, Chicago, Ill., for defendants-appellants, cross-appellees.
 C. Lee Cook, Jr., Chadwell & Kayser, Ltd., Chicago, Ill., for defendant-appellee, cross-appellant.
 Before CUMMINGS, WOOD, Jr. and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 In the early 1970's, two Wisconsin towns hired Scotty Smith Construction Company ("Scotty") to build an incinerator to burn their garbage. That action spawned a series of events that eventually resulted in a lawsuit that now has been in the federal courts for almost ten years. This is the suit's second appearance before this court. See Fidelity & Deposit Co. of Maryland v. Sheboygan Falls, 713 F.2d 1261 (7th Cir.1983). Unfortunately, we are unable to put the suit to rest.
 
 I.
 
 2
 When the towns hired Scotty to build the incinerator, they required Scotty to post a performance bond for $710,000, the amount of the contract price. Fidelity and Deposit Company of Maryland ("Fidelity") was the bond surety. To acquire the bond, Scotty agreed to indemnify Fidelity if Fidelity had to pay on the bond. The indemnity agreement provided, among other things, that Scotty would pay any litigation expenses, including attorneys' fees, that Fidelity incurred in paying the bond.
 
 
 3
 Scotty subcontracted with Midwesco, Inc. to build the incinerator's pollution-control system. Midwesco had provided Scotty with a bond issued by United States Fidelity and Guarantee Company ("USF & G"). Under that bond, Midwesco agreed to indemnify Scotty for any costs Scotty incurred (including attorneys' fees) that might arise from Midwesco's performance of the subcontract.
 
 
 4
 Midwesco obtained the scrubber for the pollution-control system from Krebs Engineers and installed it in the system. Unfortunately, the scrubber did not scrub as well as it was supposed to. Emissions from the incinerator exceeded the maximum levels allowed by Wisconsin law, and also exceeded the limits set by the contract between Midwesco and Krebs. Midwesco, Krebs, and Scotty made efforts to get the scrubber to perform up to snuff, but to no avail. The towns had paid all but about $38,000 on the contract with Scotty, and were stuck with an incinerator they could not use.
 
 
 5
 Understandably perturbed by this turn of events, the towns asserted that the scrubber's failure was a breach of contract by Scotty, and notified Fidelity that it must pay under the bond. A few months after the towns notified Fidelity of their claim, Fidelity filed a declaratory judgment action against the towns, Scotty, Midwesco, Krebs, and several other defendants. The complaint sought a declaration that Scotty had not breached the contract and that Fidelity was thus not liable to the towns on the bond. Alternatively, the complaint sought a declaration that if Fidelity was liable on the bond, Scotty was liable to Fidelity under the indemnity agreement.
 
 
 6
 Soon after Fidelity filed its complaint, other claims, cross-claims, and counterclaims began to fly amongst a number of parties. We mention only those claims relevant here. The towns sued Scotty, Midwesco, and Krebs for breach of contract. Scotty sued the towns for the $38,000 contract balance, and Midwesco, USF & G, and Krebs for indemnity. Midwesco sued the towns and Scotty for the amounts they owed Midwesco for its work, and also sued Krebs for breach of contract, negligence, and products liability. Finally, Krebs sued Midwesco for the balance due on their contract.
 
 
 7
 After a trip to this court, where we reversed the district court's grant of summary judgment against the towns, see 713 F.2d at 1268-72, the district court set the case for a jury trial. During the first day of the trial, before any evidence was taken, the parties settled all claims involving the towns. This left Scotty, Midwesco, and Krebs--mainly Midwesco and Krebs--to fight among themselves to determine who would ultimately bear the costs caused by the scrubber's failure. Those issues were tried to the court.
 
 
 8
 After trial, the district court held that Midwesco had to reimburse Scotty for attorneys' fees that Fidelity had incurred and that Scotty had reimbursed to Fidelity under Scotty's and Fidelity's indemnification agreement. The district court also held, however, that Krebs had breached its contract with Midwesco, as well as certain implied and express warranties. Applying Wisconsin law, the court held that Midwesco was entitled to consequential damages from Krebs, despite a consequential damages disclaimer in the contract. The court awarded Midwesco: 1) the out-of-pocket expenses it incurred in attempting to solve the scrubber problem; 2) Fidelity's attorneys' fees that Scotty had reimbursed to Fidelity and that Midwesco had reimbursed to Scotty; and 3) thirty-three percent of Midwesco's own attorneys' fees. Both Midwesco and Krebs have appealed.
 
 II.
 
 9
 In its cross-appeal, Krebs challenges the damages the district court awarded to Midwesco. Krebs first contends that the district court erred by awarding Midwesco any consequential damages at all. Before deciding that issue, however, we must determine what state's law to apply. The district court applied Wisconsin law; on appeal Krebs argues that California law applies because the contract between it and Midwesco specifically provided that California law would govern the contract.
 
 
 10
 Wisconsin courts have recognized the general rule that parties to a contract may select the law governing their contract. See Bush v. National School Studios, Inc., 139 Wis.2d 635, 407 N.W.2d 883, 886 (Wis.1987) (citing cases); see generally Restatement (Second) of Conflicts of Laws Secs. 186 & 187 (1971); E. Scoles & P. Hay, Conflict of Laws Sec. 18.1 (1984). But Krebs has waived any dependence on California law. In arguing the consequential damages issue in the district court, Midwesco relied solely on Wisconsin law. Krebs' briefs below did not assert that California law controlled or cite any California cases. The only time Krebs mentioned California law was in noting that Wisconsin and California law were substantially the same, so that the district court's choice between Wisconsin or California law was "immaterial." Krebs cannot blame the district court for not digging up the California law it failed to cite, particularly after telling the court that the choice of law was "immaterial." It is not the trial judge's job to do the parties' work for them. See International Administrators v. Life Ins. Co., 753 F.2d 1373, 1377 n. 4 (7th Cir.1985). Krebs took the risk that in applying the Wisconsin law the parties did cite, the district court would reach a different result than it might have had it applied California law. For better or worse, Krebs must live with the district court's choice of Wisconsin law. Cf. Muslin v. Frelinghuysen Livestock Managers, 777 F.2d 1230, 1231 n. 1 (7th Cir.1985).
 
 
 11
 The contract between Krebs and Midwesco provided that Midwesco's exclusive remedy for any breach by Krebs was repair or replacement of defective parts. The contract also specifically provided that Krebs would not be liable for any consequential damages. The Uniform Commercial Code, as adopted in Wisconsin, allows parties to limit a buyer's remedies and exclude consequential damages. Wis.Stat.Ann. Sec. 402.719 (West 1964 & Supp.1987); see Murray v. Holiday Rambler Corp., 83 Wis.2d 406, 265 N.W.2d 513, 517, 519-20 (Wis.1978). But "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [the UCC]." Wis.Stat.Ann. Sec. 402.719(2). The district court held that since replacing any parts, or even the entire scrubber, could not cure the scrubber problem, the exclusive repair or replace remedy failed of its essential purpose. Therefore, the court disregarded the limitations of remedies in the contract and awarded Midwesco consequential damages.
 
 
 12
 Krebs does not contest the district court's finding that the exclusive contract remedy failed of its essential purpose. Krebs does argue, though, that the district court erred by refusing to give effect to the consequential damages disclaimer. According to Krebs, a consequential damages disclaimer should be considered separately from a clause limiting remedies to repair or replacement. Even if the limited remedy fails of its essential purpose, the consequential damages exclusion should remain in effect unless no other effective remedy (for example, incidental damages, Wis.Stat.Ann. Sec. 402.715(1) or difference-in-value damages, Wis.Stat.Ann. Sec. 402.714(2)) remains.
 
 
 13
 Other courts have given effect to consequential damages disclaimers even when exclusive remedies failed of their essential purposes. E.g., Chatlos Systems v. National Cash Register Corp., 635 F.2d 1081, 1085-86 (3d Cir.1980); S.M. Wilson & Co. v. Smith International Inc., 587 F.2d 1363, 1374-76 (9th Cir.1978). But whatever the merits of Krebs' argument as an original matter, it is not Wisconsin law. In Murray v. Holiday Rambler Corp., supra, the Wisconsin Supreme Court held:
 
 
 14
 Where the exclusive limited remedy of the contract fails of its essential purpose ... the buyer is entitled to invoke any of the remedies available under the UCC. This includes the right to recover consequential damages under sec. 402.715.
 
 
 15
 ....
 
 
 16
 Thus, although an express warranty excludes consequential damages, when the exclusive contractual remedy fails, the buyer may recover consequential damages ... as though the limitation had never existed.
 
 
 17
 265 N.W.2d at 525, 526 (citations omitted).
 
 
 18
 Krebs argues that Murray is factually distinguishable from this case. The contract between Krebs and Midwesco specifically excluded consequential damages; the contract in Murray contained a clause excluding all remedies except the exclusive contract remedy without specifically mentioning consequential damages. But a clause excluding all remedies does exclude consequential damages. Also, as we have seen, Murray was quite explicit in its holding concerning consequential damages. And in reaching that holding, the Murray court cited with approval a case allowing plaintiffs to recover consequential damages despite a clause excluding all remedies except the exclusive remedy, Ehlers v. Chrysler Motor Corp., 88 S.D. 612, 226 N.W.2d 157 (1975) and cases allowing plaintiffs to recover consequential damages despite clauses specifically excluding consequential damages, e.g., Koehring Co. v. A.P.I., Inc., 369 F.Supp. 882 (E.D.Mich.1974); Adams v. J.I. Case Co., 125 Ill.App.2d 388, 261 N.E.2d 1 (1970). See Murray, 265 N.W.2d at 526; cf. S.M. Wilson & Co., 587 F.2d at 1374 (noting that Adams and Koehring Co. belong to a family of cases supporting the proposition that a limited remedy's failure "does remove from the contract the bar to the recovery of consequential damages"). Murray 's explicit holding, its reasoning, and the cases it cited lead us to conclude that the Wisconsin courts would find the distinction Krebs argues to be insignificant, and would award consequential damages to Midwesco, if proved.
 
 
 19
 Krebs also cites Phillips Petroleum Co. v. Bucyrus-Erie Co., 131 Wis.2d 21, 388 N.W.2d 584 (Wis.1986) to support its argument that consequential damages are available when an exclusive remedy fails only if no other effective remedy remains. In Bucyrus, the Wisconsin Supreme Court allowed a plaintiff to collect consequential damages when the limited repair and replacement remedy failed. Although Bucyrus referred to "the underlying philosophy of the Uniform Commercial Code that there be at least a fair quantum of remedy for breach of obligations," the court emphasized that "[t]he essential purpose of any damage award is to make the injured party whole," and equated an effective, or "minimum quantum of remedy" with making the injured party whole. Here, the limited remedy failed of its essential purpose; replacing or repairing the scrubber would not have solved the incinerator problem. This failure exposed Midwesco, the innocent party, to liability and litigation expense, and Krebs could make Midwesco whole only by compensating it for that liability and expense. Allowing Midwesco to recover consequential damages is consistent with Wisconsin law, as stated in Murray and Bucyrus.
 
 III.
 
 20
 Aside from contending that Midwesco was not entitled to any consequential damages, Krebs does not challenge the district court's decision to award Midwesco damages for the expenses it incurred in attempting to solve the scrubber problem. Krebs does, however, challenge the district court's decision to award certain attorneys' fees to Midwesco.
 
 
 21
 Wisconsin generally follows the "American Rule" regarding attorneys' fees and litigation expenses. Absent a specific statutory or contractual provision allowing recovery, a litigant may not recover from an opponent the attorneys' fees and expenses the litigant incurred in litigating its claim against the opponent. Murray, 265 N.W.2d at 527. But where a defendant's breach of contract causes the non-breaching party to become involved in litigation with third parties, a different situation arises. In that case, the non-breaching party may recover as consequential damages the amount of any judgment, along with his reasonable attorneys' fees and litigation expenses, incurred in the third-party litigation. City of Cedarburg L. & W. Com'n v. Glens Falls Ins. Co., 42 Wis.2d 120, 166 N.W.2d 165, 167-68 (Wis.1969) (citing Restatement (First) of Contracts Sec. 334, at 531 (1932), and 5 Corbin on Contracts Sec. 1037, at 225-26 (1965)); see also Murray, 265 N.W.2d at 527 n. 11 and 528 n. 12; Restatement (Second) of Contracts Sec. 351, comment c (1981); J. White and R. Summers, Uniform Commercial Code Sec. 10-4, at 392 (1980).
 
 
 22
 Cedarburg and Murray place two general limits on a plaintiff's recovering its expenses from third-party litigation. First, those expenses must be the "natural and proximate result" of the breach. See Murray, 65 N.W.2d at 527 n. 11. This standard comports with the UCC's general requirement that consequential damages be reasonably foreseeable. Compare J. White & R. Summers, supra Sec. 10-4, at 389 (" 'the test is one of reasonable foreseeability of probable consequences' ") (citation omitted) with Cedarburg, 166 N.W.2d at 167 (plaintiff may recover expenses for third-party litigation "that the defendant had reason to foresee when the contract was made").
 
 
 23
 Besides being reasonably foreseeable, the plaintiff's third-party litigation expenses must be reasonable. Id. at 167-68; see also Restatement (Second) of Contracts Sec. 351, comment c. A plaintiff may not unnecessarily run up its legal bill in the expectation that the breaching party will ultimately pick up the entire tab.
 
 
 24
 Krebs proposes two other limits on recovering third-party litigation expenses. Krebs "suggests" that in a case such as this "where there are claims and counterclaims and charges and countercharges running every which way amongst the parties," third-party litigation expenses should not be recoverable. Krebs also argues that because the towns, Scotty, and Fidelity were connected with the original transaction from which Krebs' liability arose (that is, the building of the incinerator and sale of the scrubber), they are not really third parties, so the expenses that Midwesco incurred in defending their claims are not expenses resulting from third-party litigation. See Armstrong Construction Co. v. Thomson, 64 Wash.2d 191, 390 P.2d 976 (1964).
 
 
 25
 Krebs cites no Wisconsin authority applying these limits to recovery. In Murray, however, the Wisconsin Supreme Court noted that a litigant may recover its expenses from third-party litigation in a "proper case." Murray, 265 N.W.2d at 528 n. 12. Krebs seizes upon the Murray court's reference to a "proper case" to argue that the Wisconsin courts would adopt the two limitations it proposes.
 
 
 26
 Krebs reads too much into the Wisconsin Supreme Court's reference to a proper case. The entire sentence in which the "proper case" language appears states: "This [holding that a plaintiff may not recover attorneys' fees resulting from his litigation against the defendant] is not to suggest that expenses of third-party litigation may not, in a proper case, be recovered under sec. 402.715, stats., in accordance with the principles generally applicable to contract damages." Id. (emphasis added). Read in context, we believe that all the Wisconsin Supreme Court meant by referring to a "proper case" was that third-party litigation expenses are recoverable only where they are reasonable and reasonably foreseeable. Those are the "principles generally applicable to contract damages."
 
 
 27
 Krebs offers no other reason why the Wisconsin courts would adopt the Armstrong holding. Certainly Scotty, Fidelity, and the towns were not parties to the contract between Krebs and Midwesco. Krebs does state that a multi-party case involving several different claims, counterclaims, and cross-claims presents problems in allocating fees and expenses between litigation with the breaching party and litigation with the third party. We agree that allocation can be a serious problem (and, as we shall see, in this case it is). But difficulty in calculation should not deny an innocent party all damages caused by a defendant's breach of contract. Courts and juries are capable of sorting out compensable third-party expenses from non-compensable expenses incurred in litigating against the breaching party. See, e.g., Campus Sweater and Sportswear Co. v. M.B. Kahn Construction Co., 515 F.Supp. 64, 111-13 (D.S.C.1979), aff'd, 644 F.2d 877 (4th Cir.1981). The allocation need not be accurate to the last dollar; all that is required is that the plaintiff prove the proper amount of third-party fees to a "reasonable probability." See Murray, 265 N.W.2d at 526.
 
 
 28
 Given the Wisconsin Supreme Court's emphasis on making the injured party whole in awarding consequential damages, see Bucyrus, 388 N.W.2d 592, it is reasonable to conclude that that court would allow Midwesco to recover its reasonably foreseeable third-party litigation expenses caused by Krebs' breach. Had Krebs not breached its contract with Midwesco, Midwesco would not have had to defend suits by the towns, Scotty, and Fidelity. Midwesco had to spend a good deal of money to defend those suits, and the only way to make it whole is to reimburse it for those costs, to the extent that they are reasonable and may be properly allocated.
 
 
 29
 The district court awarded two amounts to Midwesco as expenses resulting from third-party litigation: $44,203, which represented thirty-three percent of Midwesco's total legal bill for the litigation; and $86,223 (later increased to $144,686.75 pursuant to an agreement between Midwesco and Scotty), which represented the attorneys' fees that Scotty had reimbursed to Fidelity and then passed on to Midwesco. Krebs contends that Fidelity's attorneys' fees are not proper consequential damages because Midwesco's liability for those fees was not a natural and proximate result--that is, a foreseeable result--of Krebs' breach.
 
 
 30
 Under the UCC, a seller is liable for consequential damages "resulting from general or particular requirements of which the seller at the time of contracting had reason to know...." Wis.Stat.Ann. Sec. 402.715 (emphasis added); see also Murray, 265 N.W.2d at 528; J. White & R. Summers, supra Sec. 10-4, at 389-90. The test for recovering consequential damages is not whether the seller actually foresaw or contemplated the resulting damages when it made the contract; instead, the test is whether the seller, knowing or having reason to know the buyer's needs, could have reasonably foreseen the loss as a probable consequence of a breach. Id. at 389. This test is consistent with the standard Wisconsin courts generally apply in determining whether damages for a breach of contract are foreseeable. See, e.g., Reiman Associates v. R.A. Advertising, Inc., 102 Wis.2d 305, 306 N.W.2d 292, 300 (Wis.Ct.App.1981) (damages must "reasonably to be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach"); Hale v. Stoughton Hospital Ass'n, 126 Wis.2d 267, 376 N.W.2d 89, 95 (Wis.Ct.App.1985) (same).
 
 
 31
 We agree with Midwesco that the Fidelity fees were a reasonably foreseeable element of damage. Krebs knew when it sold the scrubber to Midwesco that Midwesco was going to install it as part of a pollution control device in a municipal incinerator. It should have been reasonably foreseeable to Krebs that if the scrubber did not work as it should, and the incinerator could not meet applicable emissions standards, litigation would be a likely result. It should also have been reasonably foreseeable to Krebs that Scotty would require Midwesco to supply a performance bond. Midwesco was supplying a major component in the incinerator project; if the pollution control system failed, the entire project would probably fail (as it did), potentially exposing Scotty to substantial liability and litigation expense. In those circumstances, it would have been imprudent for Scotty not to require a performance bond from Midwesco. Thus, at the time it contracted with Midwesco, Krebs could have reasonably foreseen that breaching that contract, by supplying an inadequate scrubber, would result in Midwesco paying Scotty's expenses in any litigation resulting from the scrubber's failure.
 
 IV.
 
 32
 While we have rejected all of Krebs' general objections to the district court's decision to award Midwesco third-party litigation expenses as consequential damages, we must remand to the district court to redetermine the amounts it should award. There are two problems with the $44,203 award for a portion of Midwesco's own attorneys' fees. First, it is not clear exactly what the district court was compensating Midwesco for by this award. The court stated simply that Krebs must "pay a portion of the legal fees and expenses not excluded by the traditional rule against cost-shifting." The court also stated, however, that Midwesco could not recover expenses "incurred pursuing its own claims and defending Midwesco's own liability against Scotty and the municipalities...." One of Midwesco's "own claims" was against Krebs; Midwesco cannot recover the expenses it incurred solely in pursuing that claim. Similarly, Midwesco cannot recover expenses it incurred solely for defending Krebs' claim against it for the balance due on their contract. But Midwesco may recover expenses it incurred in defending claims by third parties (the towns, Scotty, and Fidelity), and in pursuing its claims against third parties, as long as those claims were a foreseeable result of Krebs' breach. On remand, the district court will have to allocate Midwesco's fees and expenses between claims for which Midwesco may not.
 
 
 33
 To allow the district court to properly allocate the litigation expenses, Midwesco must present evidence to support an allocation. See Funding Systems Leasing v. King Louie Int'l, 597 S.W.2d 624, 637 (Mo.Ct.App.1979). The only evidence Midwesco presented regarding the fees and expenses it paid was testimony by one of its officers that it had incurred certain fees and expenses.[1] This evidence was not sufficient to support a finding that the district court's allocation was proper or that the fees incurred and awarded were reasonable. Although we have found no Wisconsin cases directly on point, the Wisconsin Supreme Court has stated that "the burden of proving consequential damages is on the buyer," and that "[d]amages may not be awarded on speculation or conjecture alone." Murray, 265 N.W.2d at 526. The United States Supreme Court has held that in cases in which a prevailing party in a civil rights case seeks attorneys' fees under 42 U.S.C. Sec. 1988, the prevailing party must "submit evidence supporting the hours worked," including billing records documenting those hours, so that the district court may properly determine the hours reasonably spent. Hensley v. Eckerhart, 461 U.S. 424, 433-34, 437, 103 S.Ct. 1933, 1939, 1941, 76 L.Ed.2d 40 (1983); see also id. at 441-42, 103 S.Ct. at 1943-44 (Burger, C.J., concurring) ("[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."). We believe the same standard is appropriate in this case.
 
 
 34
 We also must remand for the district court to redetermine the amount of Fidelity's attorneys' fees chargeable to Krebs. Midwesco is entitled to recover only the fees that Fidelity reasonably incurred and passed on to Scotty; although Krebs could reasonably foresee that it might have to pay these fees, it could not reasonably foresee having to pay an excessive fee. The only evidence concerning Fidelity's fees was testimony by one of Fidelity's attorneys about the billing rates of the lawyers who worked on the case and about some of his activities in the case, and testimony from an official at Fidelity that it had received and paid statements from its attorneys. The record contains no billing records documenting the hours expended.
 
 
 35
 Another problem exists with the Fidelity attorneys' fee award. The district court originally awarded $86,223. Scotty then filed a motion to reconsider, claiming that the amount Midwesco owed it (and Krebs, in turn, owed Midwesco) was $62,374 more. The district court agreed that a higher amount was appropriate, but instead of determining the precise amount the court allowed Midwesco, Scotty, and Krebs to engage in "informal discovery" regarding the reasonableness of the amount. Midwesco examined Fidelity's attorneys' billing records and disputed certain amounts; Krebs did neither. Midwesco and Scotty eventually agreed on an amount and informed the district court. The court entered judgment based on Midwesco's and Scotty's agreement.
 
 
 36
 There was no evidence taken in court to support the modified amount. Midwesco contends that Krebs has waived any objection it might have to the modified amount because Krebs refused to participate in discovery. We think not. The modified amount was not litigated; it was the result of an agreement between Scotty and Midwesco. The district court had no power to force Krebs to take discovery, or to agree to the amount of damages it had to pay to Midwesco. Cf. Kothe v. Smith, 771 F.2d 667, 669 (2d Cir.1985) (district court may not coerce parties into settling); Identiseal Corp. of Wisconsin v. Positive Identification, 560 F.2d 298, 301-02 (7th Cir.1977) (district court has no authority to make a party take discovery); J.F. Edwards Construction Co. v. Anderson Safeway Guard Rail Corp., 542 F.2d 1318 (7th Cir.1976) (per curiam) (district court has no authority to force a party to stipulate facts). Krebs was entitled to its day in court to contest the increase in the amount of Fidelity's fees it had to pay.[2]
 
 
 37
 Finally, regarding the Fidelity fees, we believe it would be inappropriate to award Midwesco fees from Krebs that are allocable to direct litigation between Fidelity and Krebs. It is true that these are third-party expenses in the sense that they do not relate to litigation between Midwesco and Krebs. But to have Krebs reimburse Midwesco for those fees would be to, in effect, have Krebs reimburse Fidelity (through Scotty and Midwesco) for fees that arose from litigation between Fidelity and Krebs. The American Rule, which Wisconsin follows, see Murray, 265 N.W.2d at 527-28, would not allow Fidelity to recover those fees directly from Krebs. It would be inappropriate to allow Fidelity to recover those fees indirectly from Krebs.
 
 
 38
 In determining the proper amounts to award on remand, the district court should keep in mind that there may be some overlap between recoverable and nonrecoverable fees. This should not prevent the court from reaching a proper allocation. Mathematical precision in awarding damages is not necessary. See Wis.Stat.Ann. Sec. 402.715, official UCC comment 4. Also, as long as reasonable evidence exists, we believe it is consistent with Wisconsin law for the district court to resolve any doubts about allocation or reasonableness in favor of Midwesco, the party to be made whole. See id.; Bucyrus, 388 N.W.2d at 592 (emphasizing that the purpose of consequential damages is to make the injured party whole); see also Restatement (Second) of Contracts Sec. 352, comment a; cf. In re Central Ice Cream Co., 841 F.2d 732, 735 (7th Cir.1988) (in determining the reasonableness of attorneys' fees in a sanctions case, benefit of the doubt is normally resolved in the innocent party's favor).
 
 V.
 
 39
 Midwesco raises one damages-related issue in its appeal. Midwesco paid $90,000 (as did Krebs and Donohue and Associates, the project engineers) to the towns to settle all claims involving the towns. In its post-trial brief, Midwesco argued that its settlement payment was a proper element of consequential damages, and that the district court should have ordered Krebs to reimburse Midwesco for the $90,000 it paid in the settlement. The district court refused to order Krebs to pay Midwesco the $90,000, stating:
 
 
 40
 As to the settlement expense, each side bought a pig in a poke. To get rid of some pesky claims, Krebs, Donohue and Midwesco each paid $90,000 to the municipalities. Liability to the municipalities was questionable ... but each side thought it best to avoid a bigger risk by working out a settlement. Although the settling parties exercised good judgment, I find no reason why Krebs should pay Midwesco's $90,000 share of the settlement in addition to its own.
 
 
 41
 Midwesco contends the district court erred.
 
 
 42
 Generally, an injured party may recover from a breaching party any reasonable payments the injured party makes to settle third-party litigation. Restatement (Second) of Contracts Sec. 351, comment c. Although the parties have not cited, and we have not found, any Wisconsin cases on point, we believe that the Wisconsin courts would follow the general rule stated in the Restatement. The general rule is consistent with the make-whole rationale behind consequential damages. The general rule also promotes the policy favoring private dispute settlements, see id.; if an injured party could not pass on the cost of a settlement but could pass on the cost of a litigated judgment in the third-party litigation, injured parties would rationally fight to the bitter end rather than accept reasonable settlements.
 
 
 43
 If Midwesco had settled the towns' claims on its own, we would not hesitate to hold that Krebs should pay to Midwesco the amount Midwesco paid to the towns. The twist here, however, is that Midwesco, Krebs, and Donohue jointly settled with the towns--and we believe this twist makes a difference. The settlement was a contract between the towns, Krebs, Midwesco, Scotty, and Donohue that was intended to end all litigation involving the towns. That contract bound Midwesco. As part of that contract, Midwesco agreed with each of the parties that it would pay $90,000 to the towns. Krebs, Scotty, and Donohue also agreed with each other, the towns, and Midwesco, to pay a certain amount (in Krebs' case, $90,000) to the towns. The towns agreed to release all their claims against all parties--not just their claims against Midwesco. Midwesco is now asking the courts, in effect, to reform the parties' contract to provide that Krebs shall pay $180,000 and Midwesco shall pay nothing.
 
 
 44
 We read the district court's opinion as interpreting the settlement as we have discussed above. Given what the record reveals that the district court had before it when deciding, we think that is a proper interpretation. Midwesco, however, argues that the district court erred because the written settlement documents expressly preserved all of Midwesco's rights against Krebs.
 
 
 45
 The "Mutual Release and Agreement" the parties signed did, in fact, state that:
 
 
 46
 Nothing in this Agreement is intended to impair, impede or in any way affect those claims and defenses which exist among [Midwesco, Scotty, and Krebs] and each or any of them, and the contractors and each of them specifically reserve any and all rights which they have or may have against one another.
 
 
 47
 The separate "Release of All Claims" document the parties signed contained similar reservation of rights language.
 
 
 48
 Krebs argues that the reservation of rights language did not preserve Midwesco's right to seek reimbursement of its settlement payment from Krebs, a right which, as we have seen, undoubtedly would have existed had Midwesco settled the towns' claims against it on its own. While the reservation of rights language appears to preserve Midwesco's right to reimbursement, there is language in the settlement documents supporting Krebs' argument. We need not go into detail, though, because the record does not show that Midwesco ever brought the precise language in the written documents to the district court's attention. Midwesco did not introduce the written documents into evidence, nor did it argue the settlement's terms when discussing damages in its post-trial brief. Moreover, on the morning the parties settled, the district court asked each party to comment about the settlement agreement on the record. At that time, Midwesco uttered not a peep about reservation of rights language in the settlement agreement, much less about that language's effect on Midwesco's right to seek reimbursement of its settlement payment from Krebs. If Midwesco had commented, Krebs could have voiced its view that the reservation of rights language did not preserve Midwesco's right to seek reimbursement, and the district court could have decided the issue (or the parties could have agreed on what the settlement meant).
 
 
 49
 Midwesco argues that the district court's comments "confirm[ ] what is contained in the release." We think not. The court noted:
 
 
 50
 And, in fact, a settlement of this nature is not, at least from my standpoint, entirely welcome because the case isn't going away. I am still going to be trying the issues between the defendants, all except Donohue, as to their respective responsibility in this case.
 
 
 51
 So, although we are settling the case, it is only going to be a portion of it. And it is my understanding that the remaining portions of this case are going to be tried to the court.
 
 
 52
 The trial judge's comments are not necessarily inconsistent with the view that the judge took on reimbursement. The district court knew that other claims and possible elements of damages existed, and it was not unreasonable for the court to assume that Midwesco could give up its right to reimbursement of the settlement payment without giving up its other damages. The important point is that the record does not show that Midwesco raised the reservation of rights language in the district court; we will not reverse the district court based on an argument that was not presented in that court.
 
 VI.
 
 53
 Krebs raises one non-damages issue. According to Krebs, the district court erred in admitting Dr. Eric Aynsley's testimony because Dr. Aynsley was not listed as a witness in the final pretrial report. The final pretrial order stated that "a witness not listed [in the final pretrial report] will not be permitted to testify absent a showing of cause or surprise."
 
 
 54
 Dr. Aynsley was the president of Almega Corporation. Late in 1979, Midwesco, Scotty, and Krebs had hired Almega Corporation to conduct tests on the emissions from the incinerator. Almega Corporation issued a report (the "Almega Report") detailing the results of those tests. The district court expressly relied on the Almega Report in finding that Krebs had supplied an inadequate scrubber.
 
 
 55
 Although Fed.R.Civ.P. 16 provides that the final pretrial order shall control the course of the trial, the decision whether to allow an unlisted witness to testify rests in the district court's discretion. See Sadowski v. Bombardier, Ltd., 539 F.2d 615, 621 (7th Cir.1976). We will reverse the district court's decision to allow an unlisted witness to testify only if there is "a clear abuse of discretion or manifest injustice." Id.
 
 
 56
 Krebs claims that Dr. Aynsley's testimony surprised and prejudiced it. We perceive, however, neither a clear abuse of discretion nor manifest injustice in admitting Dr. Aynsley's testimony. The pretrial order allowed non-listed witnesses to testify if cause existed. There was good cause to allow Dr. Aynsley's testimony. Before the settlement with the towns, Midwesco's position was that it would be essentially a "bystander" at the trial; if the jury found that poor incinerator design caused the scrubber failure, Midwesco would not be liable; if the jury found the scrubber was the problem, Midwesco's position was that it could transfer any liability it incurred to Krebs. After the settlement, though, Midwesco itself bore the brunt of showing that the scrubber was inadequate so that it could recover damages from Krebs. The testimony of Dr. Aynsley, who supervised the scrubber tests, was probably the most probative evidence available on the scrubber's adequacy and was essential to Midwesco's case after the settlement.
 
 
 57
 Krebs' claims of surprise and prejudice ring hollow. The general subject matter of Dr. Aynsley's testimony should have come as no surprise to Krebs; Krebs had had a copy of the Almega Report for years before the trial. And, as the above discussion indicates, Krebs should have anticipated and prepared for an attack on the scrubber's adequacy even before the settlement with the towns. Moreover, the record does not reveal any surprise or prejudice to Krebs. Indeed, Krebs' counsel thoroughly cross-examined Dr. Aynsley, and Krebs presented two witnesses (one of whom was not listed in the final pretrial report) to rebut Dr. Aynsley's testimony. The district court's decision to allow Dr. Aynsley to testify was not reversible error.
 
 VII.
 
 58
 To sum up, we conclude that the district court correctly decided that Midwesco could recover consequential damages from Krebs, including a portion of its own attorneys' fees and Fidelity's attorneys' fees for which it reimbursed Scotty. Midwesco may not recover from Krebs the $90,000 Midwesco paid to the towns to settle their claims. Although we agree with the district court on these general issues, we must (unfortunately) remand this case. On remand, the district court shall take evidence and decide upon the reasonableness and proper allocation of the attorneys' fees for which Midwesco seeks recovery.
 
 
 59
 Finally, we remind the parties (if they need reminding) that this case is now ten years old. Since Midwesco and Krebs now know generally what is and is not recoverable, it is not unreasonable to believe that they should be able to get together and agree on the proper amount of fees Midwesco should receive. We implore Midwesco and Krebs to attempt to settle their differences without involving the district court; such a settlement will be in their own, and the court's best interests.
 
 
 60
 For the reasons discussed above, the district court's judgment is AFFIRMED in part and REMANDED in part for proceedings consistent with this opinion. Each party shall bear its own costs on appeal.
 
 
 
 [1]
 Midwesco's failure to present further evidence is understandable; the district judge had told the parties at trial that he would defer taking any evidence concerning the reasonableness and allocation of attorney's fees until a later date but then entered a final judgment without taking such evidence. For that reason, remand rather than outright reversal is appropriate
 
 
 [2]
 At trial, Midwesco contended that Scotty owed Midwesco $37,759 under their contract (the "retainage"). The district court awarded Midwesco no damages on this claim, and Midwesco appealed against Scotty. While all the appeals were pending, Scotty agreed to accept $120,000 from Midwesco in full satisfaction of its judgment against Midwesco. Krebs contends that by this settlement Midwesco and Scotty reduced the amount of reimbursement due to Scotty, and, therefore, Midwesco may only recover $120,000 from Krebs. Midwesco contends that it and Scotty merely compromised the retainage claim, and that this compromise resulted in a net amount due to Scotty of $120,000. According to Midwesco, this settlement does not affect the amount of damages due from Krebs
 The briefing by both parties on this issue was woefully inadequate, and the record is not much help in determining whether Krebs or Midwesco has properly characterized the settlement. Since we are remanding this case, we leave to the district court the issue of how the Scotty-Midwesco settlement affects the amount of damages due from Krebs.